COMMONWEALTH *vs.* JOSEPH LaCAPRUCIA.

No. 95-P-923.

Hampden. April 9, 1996. - October 18, 1996.

Present: GREENBERG, FLANNERY, & LENK, JJ.

*Child Abuse. Evidence,* Expert opinion, Opinion, Sexual conduct, Credibility of witness. *Witness,* Expert, Credibility. *Practice, Criminal,* Argument by counsel.

At the trial of indictments for rape and other sexual abuse of children, the judge improperly admitted expert testimony on the characteristic profile of an incestuous family and other testimony directly linking the characteristics of sexually abused children to the complainants; where evidence of sexual abuse was not overwhelming and credibility was the main issue, the error was not harmless and the case was remanded for a new trial. [497-502]

INDICTMENTS found and returned in the Superior Court Department, seventeen on December 4, 1992, and two on July 21, 1993, respectively.

The cases were tried before *Francis X. Spina,* J.

*Judy Zeprun Kalman,* Assistant District Attorney (*Lori K. Odierna & Judith E. Osburn,* Assistant Attorneys General, with her) for the Commonwealth.

*John S. Ferrara* for the defendant.

GREENBERG, J.From 1983, until his arrest in October, 1992, the defendant lived at home with his wife and family; two children, Ashley and John,[1] were ten and five years old at the time of trial. In October, 1992, Ashley told an investigator from the Department of Social Services that both parents had sexually abused her and her younger brother over a period of years. As a result of these accusations and subsequent police investigation, the children were placed in foster care. Both parents were charged, the defendant on thirty-five indict-

---

[1]We use pseudonyms, as is our custom.

ments for rape of a child (three with force), six counts of indecent assault and battery on a child under fourteen, and two counts of posing or exhibiting a child in a live performance involving sexual conduct.[2] After trial and three days of deliberation, the jury convicted the defendant on eleven indictments for rape of a child and all of the indecent assault and battery and unlawful exhibition of a child charges. The defendant appeals, bringing up for review numerous evidentiary points and other issues.

We conclude that the judge improperly admitted expert testimony on the characteristic profile of an incestuous family and other testimony directly linking the characteristics of sexually abused children to the complainants in this case. Consequently, we reverse the convictions.

The issue that requires our scrutiny pertains to testimony offered by the government's expert, Dr. Denise Gelinas, a psychologist, and Maureen Brown, a school counselor and social worker, regarding "child disclosure processes" and on the behavior patterns of children who have suffered sexual abuse. It is settled that the trial judge has discretion to allow such expert testimony where it may assist the jury in deciding a contested issue, including "expert testimony on the typical symptoms of sexually abused children because the information is beyond the common knowledge of jurors and of assistance in assessing a victim witness's testimony and credibility." *Commonwealth* v. *Dockham*, 405 Mass. 618, 629-630 (1989), and cases cited. Though the *Dockham* court held that testimony about the behavioral signs and symptoms sexually abused children frequently exhibit may be admitted at the judge's discretion, "the line between proper testimony as to patterns of disclosure of child sexual abuse victims and improper testimony constituting endorsement of the credibility of a victim-witness is indeed a narrow one." *Commonwealth* v. *Rather*, 37 Mass. App. Ct. 140, 148 (1994).[3] Such limits as bear on the discretion of a trial judge to bar

---

[2]At the time of the defendant's trial, the mother was under indictment for rape of her children. She testified at her husband's trial as a witness for the prosecution.

[3]Several scholarly studies of incest families and sexually abused children caution that there are no "typical" traits or common characteristics that portray child sexual abuse. The literature casts considerable doubt on whether psychological expert testimony should be used to usurp the jury's role in deciding guilt or innocence. See Friedrich, Child Abuse & Sexual

impermissible opinion testimony in child sexual abuse cases were recently discussed in *Commonwealth* v. *Richardson*, 423 Mass. 180, 186 (1996). The test of admissibility of sexual profile testimony is whether "the witness explicitly links the opinion to the experience of the witness child." *Ibid.* Such testimony clearly amounts to impermissible vouching. "Where there is no link between the expert testimony and the victim, the opinion is usually allowed." *Ibid.*, and cases cited. However, in some cases, the *Richardson* court said that "opinion testimony that does not explicitly link the opinion to the child witness [may] nevertheless constitute[] impermissible vouching." *Ibid.*, and cases cited.

The case at bar falls into the last category. The line was crossed when, over the defendant's objection, Dr. Gelinas went beyond the description of general principles of social or behavioral science that might assist the jury in their deliberations concerning credibility and gave testimony concerning family dynamics that evolved into profile testimony that signaled the jury that the child complainants were sexually abused.[4] This testimony included her statement that "the most characteristic constellation or structure of an incestuous family is one in which the mother is usually . . . overburdened or impaired in some way[5]. . . . [The father] usually ha[s] in some ways a more active relationship with the children in the family than [the] mother does . . . and . . . that puts the oldest [child], usually daughter, at risk to be sexually abused

Abuse, in The MMPI [Minnesota Multiphasic Personality Inventory]: Use With Specific Populations, at 246-256 (Greene ed. 1988) ("A common misconception about sex offenders against children is there exists a 'sex offender profile,' and the degree to which an individual 'fits' that profile relates to the degree of certainty a clinician has regarding likelihood of offense); Scott & Stone, MMPI Profile Constellations in Incest Families, 54 J. Counseling & Clinical Psychology 364 (1986) ("Most of the studies of incest families that appear in the literature have theorized personality and family dynamics on the basis of clinical observation as opposed to empirical or psychometric investigation").

[4]During the hearing on the Commonwealth's motion in limine to allow Dr. Gelinas to testify on child abuse accommodation syndrome and delayed disclosure, the trial judge limited the scope of such testimony to the "area of descriptions of this syndrome, to offer some explanations as to why children would delay reporting." The prosecutor assured the court that the testimony would be so limited. The trial judge assumed that the proffered profile would be focused on the victim and family traits in general, and not on the family traits of the accused.

[5]The defendant's wife has limited intellectual capacity and was allowed to testify only after the trial judge made a preliminary determination of competency.

by the father in a situation in which he feels pretty highly entitled . . . . I almost hate to go into it but, basically, it puts the incestuously abused child in a terrible position because the person she is closest to . . . and the one to whom she probably feels the most loyal is the one who's doing the sexual[ ] abus[e]." In essence, the expert gave characteristic sexual profile testimony that presented the defendant's family situation as prone to sexual abuse, suggesting to the jury that this was a reliable factor as to whether sexual abuse occurred. This inadmissible profile evidence had the effect of identifying the defendant as a person likely to commit incestuous sexual abuse, and the complainants as children who testified truthfully to the occurrence of sexual abuse. See *Commonwealth* v. *Ianello*, 401 Mass. 197, 201-202 (1987).

Maureen Brown, Ashley's school counselor, over objection, offered her personal observations gleaned from regular counseling sessions with Ashley over several years. Before allowing Brown to give testimony concerning Ashley's behavioral symptoms, the judge said that he was "a little leery of [Brown] giving an opinion on the ultimate issue in this case." However, not having made a definitive ruling at that time, the judge permitted her to testify that "the biggest . . . sign[ ] that [she] observe[d] in [Ashley] that [she] could categorize as consistent with [her] experience dealing with traumatized children . . . would be [Ashley's] need to present kind of a blank slate. Very often children who have been raised in abusive homes are clearly given a rule, don't talk, don't trust, don't feel." Over the defendant's objection, Brown identified as "clinical symptoms" Ashley's "[in]ability to deny or repress her feelings," social isolation from her peers, resistance to "therapeutic relationships," "stares or spaceyness," and other diagnostic behaviors. She concluded that "[t]hese . . . things . . . in my experience and in the literature are significant in determining an abused child."[6] Although she did not directly render an opinion as to whether Ashley was sexually abused,

---

[6]Brown was not qualified by the judge to give an expert opinion, nor was she presented to the jury as an expert, and therefore any limiting instruction to the jury regarding evaluation of expert testimony would not have been considered in their assessment of Brown's opinion testimony. That testimony based on literature and comparative observations of other abused children went beyond the range of testimony permissible by laypersons. Still, she was mistakenly permitted to offer a lay opinion on the subject based on her professional experiences dealing with Ashley. Consequently,

we conclude that Brown's testimony amounted to a lay opinion that Ashley was an abused child. Contrast *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 467-468 (1996). Her testimony went beyond her classroom observations of Ashley by improperly relating those observations to her experience with other traumatized children. Such testimony borders on a statement as to how this witness feels about the credibility of the child complainant. See *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 759 (1995) (doctor's opinion testimony comparing child complainant to general characteristics of sexually abused children impermissibly intruded upon jury's province to assess credibility of the child witness).

Together with Dr. Gelinas's testimony that some children disassociate in order to adapt to sexual abuse and that one of the behaviors observed is that "the child will often look kind of spacey," Brown's testimony acquired the veneer of an expert. The danger of such implicit vouching is greater where, as here, the witness is testifying to actual interaction with the child.

Although Dr. Gelinas was not a treating therapist, somewhat lessening the risk that her testimony could "be construed as impliedly supporting the truthfulness of [the complainants]," *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 591 (1994), that was not the case with Brown. Brown's direct testimony about Ashley's demeanor at school and behavior in regular small group discussions was highly suggestive.[7] Coupled with Dr. Gelinas's testimony of behavioral symptoms of sexually abused children, there was a substantial risk that the jury's confidence in Ashley's credibility would be enhanced. This was especially true when the testimony came from her school counselor. See *Commonwealth* v. *O'Brien*, 35 Mass. App. Ct. 827, 832 (1994) (warning prosecutors to avoid questions to witnesses of whether child victim's behavior conformed to the "general characteristics" of abused chil-

---

there was danger of prejudice. See *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 207 (1990). See also *Commonwealth* v. *Richardson*, 423 Mass. at 186.

[7]The prosecutor asked, "Did you ever see her stare?" Brown testified affirmatively, "mostly when we were in a small group situation with three girls her age. Usually when the conversation got onto a deeper level where the girls were sharing issues that were disturbing them, [Ashley] would lean back and withdraw from the conversation and often stare out a window or at a blackboard, definitely distancing herself from the group."

dren). See also *Commonwealth* v. *McCaffrey, supra* at 592 (treating therapist who testifies to general syndromes might be viewed as implicitly endorsing the complainant's testimony by virtue of the fact that she has accepted complainant into therapy).

In a recent decision, *Commonwealth* v. *Brouillard,* 40 Mass. App. Ct. 448, 453 (1996), we reviewed the testimony of a treating therapist who exceeded the permissible testimonial boundaries by explicitly connecting the complainants to the general syndromes associated with sexual abuse. In *Brouillard,* we also concluded that the evidence "had the effect of impermissibly vouching for the complainants' credibility." *Id.* at 451. As in *Brouillard,* the combination of Gelinas's expert testimony and Brown's testimony, while not directly vouching for the complainants' credibility nor expressly connecting the children's claim of sexual abuse to the defendant, served as the functional equivalent. See *Commonwealth* v. *Trowbridge,* 419 Mass. at 759-760. We conclude that such testimony is inadmissible because it usurps the jury's traditional functions. *Commonwealth* v. *Ianello,* 401 Mass. at 202.

Having concluded that the direct testimony on credibility should not have been admitted, we turn now to the question of whether there was reversible error. *Commonwealth* v. *Montanino,* 409 Mass. 500, 504-505 (1991). Part of that determination turns on what the prosecutor argued to the jury. We reprint in the margin a portion of the closing argument in which she urges the jury to consider whether the defendant's wife had a motive to lie. The argument pushed nearly all of the "hot-button" issues and matched the inadmissible expert testimony.[8] We conclude that the prosecutor's closing statements regarding Dr. Gelinas's testimony compounded the problem. The prosecutor's remarks suggested to the jury that the defendant sexually abused his children simply because he

---

[8] "Did I have to ask [the mother] questions? Wasn't this enough for you? Wasn't this enough to tell you that something was wrong with this picture? Did you get any insight at all from watching [the mother] as to why these children weren't protected? As to why the abuse went on for years and years and years? Did that help you to understand it? If that alone wasn't enough, consider that in conjunction with Denise Gelinas's testimony that in incest cases there is always, often a weaker parent and powerful parent. The powerful parent is the abuser. Who in this relationship was the powerful parent? the defendant, not [the mother]."

fit the mold, e.g., that he was married to a retarded woman, placing him in the position of being the more responsible, more powerful parent. See *Commonwealth* v. *Day*, 409 Mass. 719, 725, 726 n.6 (1991) (admission in evidence of child battering profile is reversible error since a reasonable jury could have inferred that the prosecutor was implying that the defendant fit the "child battering profile," and, as a result was responsible for the child's fatal injuries).

To make matters worse, in another part of her argument the prosecutor emphasized that neither Dr. Gelinas nor the counsellor, Brown, had a motive to lie. There was no suggestion by the prosecutor that the witnesses' opinion of the credibility of the complainants would ordinarily be inadmissible, and the judge's charge merely repeated "boilerplate" instructions concerning credibility and the nature of expert testimony. Without more, there was a substantial likelihood that the jury would consider the sexual profile and opinion testimony as supportive of the accuracy, reliability, and truthfulness of the children's testimony. *Commonwealth* v. *Rather*, 37 Mass. App. Ct. at 150-151.

Guilt or innocence on these charges ultimately turned on the question of the children's credibility; evidence of sexual abuse was not overwhelming, and physical evidence of abuse was notably minimal. It cannot be said that the jury would have convicted even in the absence of the error in admitting the profile testimony and testimony linking characteristics of the child complainants to characteristics of sexually abused children. *Commonwealth* v. *Rather, supra* at 149.

*Other issues.* The other points raised by the defendant are either without merit or are unlikely to arise at any retrial. With regard to the defendant's argument regarding the denial of his motion for a court-ordered polygraph test, we note that the Supreme Judicial Court has given no indication that it intends to abandon the formulation in *Frye* v. *United States,* 293 F. 1013 (D.C. Cir. 1923), in the polygraph contest. See *Commonwealth* v. *Mendes,* 406 Mass. 201, 205 (1989).

*Judgments reversed.*

*Verdicts set aside.*