**ALAMOANA MULITAUAOPELE, Appellant,**

v.

**AMERICAN SAMOA GOVERNMENT, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 09-01

November 3, 2003

Before KRUSE, Chief Justice, WALLACE,[*] Acting Associate Justice, MOLLWAY,[**] Acting Associate Justice, MAMEA, Associate Judge, TUPUIVAO, Associate Judge.

---

[*] The Honorable J. Clifford Wallace, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation of the Secretary of the Interior.
[**] The Honorable Susan Oki Mollway, District Judge, United States District Court for the District of Hawaii, sitting by designation of the Secretary of the Interior.

Counsel: For Defendant-Appellant, Tautai A.F. Fa`alevao and
Curtis E. Sherwood
For Plaintiff-Appellee American Samoa Government, Fiti A.
Sunia

## OPINION AND ORDER

### Introduction

The defendant-appellant, Alamoana Mulitauaopele ("Mulitauaopele"), was charged in a two-count information with unlawful possession of methamphetamine and cocaine. After a jury trial, Mulitauaopele was convicted on both counts and sentenced to two consecutive ten-year terms of imprisonment.

Mulitauaopele appealed, arguing that: 1) the admission of expert testimony by Captain Va`aomala K. Sunia ('Sunia") was improper; 2) the imposition of two consecutive ten-year terms was improper; 3) the two consecutive ten-year terms amounted to cruel and/or unusual punishment; and 4) the government failed to produce sufficient evidence at trial to support the convictions.

Because Sunia improperly provided an opinion that was tantamount to saying that Mulitauaopele was guilty, and because that opinion lacked an admissible foundation, we reverse Mulitauaopele's convictions.

### Background

A. The Evidence Regarding Drug Trafficking.

Mulitauaopele asked fifteen-year-old Pio Vitolio, Jr. ("Vitolio"), to take a trip to buy drugs and bring them back to American Samoa. Mulitauaopele made all of the preparations for the trip. He got Vitolio a birth certificate and a certificate of identity and paid for Vitolio's airline ticket in cash. Mulitauaopele gave Vitolio two envelopes containing money and told Vitolio to carry them. Mulitauaopele flew with Vitolio to Honolulu, Hawaii, and then to Los Angeles, California.

In Los Angeles, they purchased a substance containing Methamphetamine. On their way back to American Samoa, they stopped in Honolulu, where Mulitauaopele made a phone call and then went out to pay for some cocaine. He told Vitolio to stay at a house and wait for two men to bring the cocaine.

Mulitauaopele and Vitolio then returned to the Honolulu airport separately. Vitolio was carrying the drugs--one bag of methamphetamine and two bags of cocaine. He had gotten a ride back to

34

the Honolulu airport from the men who had given him the cocaine. Vitolio got to the airport so late that the plane had left the gate without him and had to be called back so that he could board.

Mulitauaopele and Vitolio met in the bathroom after they arrived at the airport in Pago Pago. Mulitauaopele told Vitolio to follow him. They then went to the baggage area, picked up Mulitauaopele's bags, and walked to the customs area.

Mulitauaopele and Vitolio handed Territorial Custom Inspector Patrick Tuvale ("Tuvale") a single customs declaration form. When Tuvale asked why only one form was being used for two people, Mulitauaopele answered that Vitolio did not know how to complete the form. Tuvale asked about the bags and Mulitauaopele told him that the bags belonged to Mulitauaopele, but that Vitolio's clothes were in one of them. Tuvale then asked whether they were visiting American Samoa. Mulitauaopele affirmed that they were "visiting." Tuvale noticed that Vitolio's certificate of identity had been issued three days earlier in American Samoa, suggesting that Vitolio was not just visiting American Samoa. Tuvale was also suspicious because Mulitauaopele had been answering the questions put to Vitolio, and because Vitolio appeared nervous. Tuvale therefore directed a "one hundred percent search" of both Mulitauaopele and Vitolio. Authorities found two bags of cocaine and one bag of methamphetamine on Vitolio.

At trial, Vitolio, who was cooperating with the government, testified that Mulitauaopele had recruited him and directed his actions.

B. Sunia's Expert Testimony

The government offered Sunia, a police captain, as "an expert witness in the area of controlled substance investigation including the street value of drugs and the methods of drug smuggling." The government says it needed Sunia to explain to the jury how Mulitauaopele could "possess" drugs when the drugs were being carried by someone else, a procedure called "muling."

Sunia testified that there were three kinds of "muling operations." The third type involved a "vulnerable mule," usually an unemployed person acting out of fear, or a pregnant or young person. Sunia said his observations of the witnesses, the testimony of the witnesses, and other evidence led him to conclude, in light of his training and experience, that the "operation" was consistent with a "muling operation" using a "vulnerable mule." Sunia recapped the evidence, referring to Tuvale's testimony that Vitolio had appeared nervous and that Mulitauaopele had answered all questions asked of him and Vitolio. Sunia noted that Vitolio had testified that all travel documents and tickets were obtained

35

for him and that he had been brought to the airport at the last minute by the men who gave him drugs. Sunia then opined that Vitolio "appears to be a person who was very—who was persuaded early into accepting what was offered to him." Sunia concluded that "[t]hey used this kid's weaknesses, his ignorance of what's surrounding him. He was just following instructions."

## Analysis

### A. Sunia's Expert Testimony Regarding Methods of Drug Smuggling was Admissible Under Rule 702

Rule 702 of the American Samoa Rules of Evidence provides for the admission of expert testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact." In such situations, "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify ... in the form of an opinion or otherwise." *Id.* The starting point for determining whether any expert testimony is admissible is first finding that it is relevant and reliable.

In *Daubert v. Merrell Dow Pharm., Inc.*, 50 U.S. 579, 589 (1993), the Supreme Court focused on the admissibility of scientific expert testimony. Under Rule 702 of the Federal Rules of Evidence, which at the time was identical to American Samoa's present Rule 702, the court found that expert testimony is admissible only if it is both relevant and reliable. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 146 (1999), the Court explained that the presiding judge's role in ensuring the reliability and relevancy of expert testimony extends to all expert testimony.[1]

*Daubert* outlined specific factors, such as testing, peer review, error rates, and acceptance in the relevant scientific community, some or all of which might assist in determining the reliability of a particular scientific theory or technique. *Daubert,* 309 U.S. at 593-94. The *Daubert* test is "flexible," and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a [trial] court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho,* 526 U.S. at 141. Under Rule 702, *Daubert,* and *Kumho,* Sunia's testimony was admissible only if he was qualified as an expert and his testimony was reliable and relevant, and would assist the trier of fact.

---

[1] The federal rule was amended in 2000 in response to *Daubert, Kumho,* and other similar cases. *See* Fed. R. Evid. 702 advisory committee's note.

In *United States v. Mendoza-Paz*, 286 F.3d 1104, 1112-13 (9th Cir. 2002), the Ninth Circuit held that the trial court did not err in qualifying an expert to give testimony regarding the value of seized marijuana. Although *Mendoza-Paz* did not explicitly discuss Rule 702, it concluded that the *Daubert/Kumho* test for reliability was satisfied because the valuation expert testified that he had investigated illegal narcotics trafficking for eleven years and had participated in seminars on methods and techniques of drug trafficking organizations. He further testified that he learned about the value of illegal narcotics through his experience working with intelligence databases, in-house intelligence agents, confidential informants, defendants he debriefed, and cooperating defendants.

Just as the Ninth Circuit concluded in *Mendoza-Paz,* we conclude that the *Daubert/Kumho* test for reliability was satisfied here as to Sunia's expertise in the area of the methods of drug smuggling. Sunia testified that he had spent eight of his fifteen years as a law enforcement officer involved, at least in part, in the investigation and detection of controlled substances. For four of those eight years, Sunia's primary focus was controlled substances investigations. Additionally, Sunia had been in charge of the vice and. narcotics division of the police department for about a year to a year and a half. Sunia testified that he attended training sessions "on how drugs are being used by gangs in L.A." He further testified that he participated in undercover drug investigations. Through this experience, Sunia testified, he had become familiar with the way methamphetamine and cocaine were smuggled. Accordingly, Sunia's expert testimony on the methods of drug smuggling was admissible.

B. Sunia's Testimony Went Beyond Admissible Expert Testimony

■ "A trial court has broad discretion concerning the admissibility or exclusion of expert testimony, and its action will be sustained unless its action is shown to be manifestly erroneous." *EW Truck & Equip Co. v. Coulter,* 20 A.S.R.2d 88, 92 (App. Div. 1992). Although Sunia's testimony satisfied Rule 702, Mulitauaopele argues that it amounted to improper drug courier profile evidence that should not have been admitted. We agree.

■ Drug courier profile evidence is a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *United States v. Lui,* 941 F.2d 844, 847 (9th Cir. 1991) (quoting *Reid v. Ga.,* 448 U.S. 438, 440 (1979) (per curiam)). Sunia testified that Vitolio fit the "vulnerable mule" description because Vitolio was young and nervous and let Mulitauaopele answer questions

37

and fill out the declaration form. This was drug courier profile evidence.[2]

■ The Ninth Circuit has "denounced the use of drug courier profile evidence as substantive evidence of a defendant's innocence or guilt." *Lui*, 941 F.2d at 647. Drug courier profiles are "inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers." *Id.* at 847 (quoting *United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983)). Accordingly, the Ninth Circuit has cautioned that drug courier profile evidence should not be used to prove a defendant's guilt. *Lui*, 941 F.2d at 847. The unfair prejudicial effect of such profile evidence far outweighs its probative value and therefore the profile evidence should be excluded. *See United States v. Lim*, 984 F.2d 331, 335 (9th Dir. 1993). In short, such profile evidence may be excluded under T.C.R.Ev. 403, which mandates exclusion of evidence when its probative value is substantially outweighed by its unfair prejudicial effect.

Other circuits agree that drug profile evidence should not be used as

---

[2] Sunia's testimony about the types of muling operations, as well as his comments on Mulitauaopele's purchase of Vitolio's airlines tickets and remarks about Vitolio's late arrival at the airport, however, were modus operandi ("MO") evidence, not drug courier profile evidence. *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) (stating that MO evidence aids a jury's understanding of complex criminal activities and notifies the jury that combinations of seemingly innocuous events may indicate criminal behavior). Government agents may testify regarding the general practices of criminals to establish an MO in complex criminal cases. *Id.* (permitting "expert testimony that drug traffickers often employ counter- surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pages and public telephones"); *accord United States v. Cordoba*, 104 F.3d 225, 229-30 (9th Cir. 1997) (noting that testimony regarding drug traffickers' practice of avoiding giving large amounts of cocaine to couriers who do not know what they are transporting was not drug courier profile evidence, but instead permissible MO evidence in a complex criminal case). The definition of what is a sufficiently complex criminal case to allow expert testimony differs in the MO and drug courier profile contexts. In the latter, for instance, the Ninth Circuit has found "nothing complex" about a drug conspiracy involving two defendants traveling on the same plane with only one of the two carrying the drugs. *United States v. Lim*, 984 F.2d 331, 335 (9th Cir. 1993). The present case offers complexity sufficiently analogous to that in *Gil* and *Cordoba* to permit MO evidence. As noted below, however, that is not the same as saying that this case was sufficiently complex to permit drug courier profile evidence.

substantive evidence. In *United States. v Williams*, 957 F.2d 1238 (5th Cir. 1992), the Fifth Circuit noted:

> While the government may introduce evidence that the defendant exhibited individual behaviors that make up the profile, it is something entirely different to tell the jury that all the behaviors together fit a law enforcement mode: of a drug courier. Despite the wide latitude district judges have in determining whether evidence is more probative than prejudicial, in our view the probative value of a drug courier profile is so low in relation to its prejudicial effect that its admission is error.

*Id.* at 1242 (internal citation omitted); *accord United States v. Jones*, 913 F.2d 174, 177 (4th Cir. 1990) (stating that it is improper to use expert testimony as substantive evidence to show that the defendant fits a profile and, therefore, must have intended to distribute drugs); *United States v. Carter*, 901 F.2d 683, 694 (8th Cir. 1990) ("Drug courier profiles are investigative tools, not evidence of guilt. The admission of a profile into evidence is inherently prejudicial and can easily influence a jury into thinking that the defendant is guilty. Drug courier profiles are not to be admitted as substantive evidence of guilt.") (internal quotation marks and citation omitted); *see also Commonwealth v. Poitras*, 777 N.E.2d 647, 650-51 (Mass. App. Ct. 2002) (reversing a sexual assault conviction because an expert improperly testified as to a profile typically found in child sex abuse cases, and noting the prejudice to defendant because guilt or innocence turned on the complainant's credibility and the jury might have found that the defendant fit the profile).

■ Drug courier profile evidence, however, is not always improper. For example, a court does not abuse its discretion in allowing such evidence to rebut a defendant's claim that he or she does not fit the typical drug courier profile. *See United States v. Beltron-Rios*, 878 F.2d 1208, 212-13 (9th Cir. 1989). It may also be used to establish a modus operandi in complex cases. *United States v. Klimavicius-Viloria,* 144 F.3d 1249, 1259 (9th Cir. 1998); *Lui*, 941 F.2d at 848 (recognizing that drug courier profile evidence may be allowed in complex drug-smuggling conspiracy cases). The present case does not involve either exception. Sunia provided a drug courier profile when he testified that Vitolio fit the "vulnerable mule" description because he was young and nervous, and because Mulitauaopele answered all of the questions put to Vitolio and filled out the declaration form for him. This case is very much like *Lim*.

In *Lim*, the trial court allowed an agent to testify regarding the drug courier "shotgun" profile, in which the "shotgun" carries no drugs, instead traveling with a "mule" who carries the drugs. *Lim*, 984 F.2d at 334. Noting that the expert testimony was not presented to rebut

testimony by the defendant, the Ninth Circuit then determined that there was "nothing complex about this conspiracy." *Id.* at 335. In *Lim*, the drug courier "shotgun" profile was applied to "two innocuous bits of evidence concerning Lim - the fact that he was engaging in domestic travel and was <u>not</u> carrying drugs." *Id.* *Lim* noted that the prejudicial effect of the "shotgun" profile far outweighed its probative value. Accordingly, *Lim* held that the drug courier profile was improperly used as substantive evidence of guilt. *Id.*

Here, the unfair prejudicial effect of the drug courier profile evidence substantially outweighed its probative value, as it merely explained a relatively simple crime. The evidence should have been excluded under Rule 403 and the court committed a manifest error by admitting it. Accordingly, we conclude that the trial court abused its discretion in allowing Sunia to testify that Vitolio fit the profile of a vulnerable mule.

C. <u>Sunia Improperly Testified That Mulitauaopele Used Vitalio's Weaknesses</u>

 Sunia's testimony went beyond the improper profile evidence. Sunia opined that Mulitauaopele had used Vitolio's weaknesses. This was tantamount to saying not just that Vitolio fit a profile but that Mulitauaopele was guilty. This opinion was also inadmissible. Although T.C.R.Ev. 704 does not contain the prohibition in Fed. R. Evid. Rule 704(b) against expert testimony in a criminal case as to whether a defendant had the mental state constituting an element of the offense charged, American Samoa's rules do not open the door to all expert testimony on the ultimate issue of a defendant's guilt. Rule 704 allows expert testimony "in the form of an opinion or inference" only when it is "*otherwise admissible*." T.C.R.Ev. 704.

Although Sunia was qualified to provide expert testimony as to methods of drug smuggling, Sunia's opinion that Mulitauaopele was actually using Vitolio's weaknesses to smuggle drugs was based on improper drug courier profile evidence that was not admissible.[3] Of course, an expert's opinion may be based on inadmissible facts or data under Rule 703. Here, however, Sunia's opinion as to Mulitauaopele's use of Vitolio's weakness was so completely intertwined with and dependent on Sunia's drug courier profile testimony that the inadmissibility of the profile evidence left Sunia with nothing to present to the jury in support of his opinion as to Mulitauaopele's use of Vitolio. Without the inadmissible drug courier profile evidence, his opinion was an unadorned and unexplained statement that Mulitauaopele was guilty. Such a statement would not assist the jury and so was inadmissible under

---

[3] The evidence described in footnote 5 above did not support Sunia's opinion that Mulitauaopele was using Vitolio's weaknesses.

Rule 702, which permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Moreover, the opinion as to guilt ran afoul of Rule 403, which provides for exclusion of evidence when its probative value is substantially outweighed by its unfair prejudicial effect. A bald, unsupported opinion as to guilt is highly prejudicial and totally lacking in probative value. Sunia's opinion that Mulitauaopele was using Vitolio's weaknesses to smuggle drugs should have been excluded.

## D. Allowing Sunia to Testify that Mulitauaopele was Using Vitolio's Weaknesses to Smuggle Drugs Was Not Harmless Error

The trial court's errors in allowing Sunia to provide drug courier profile evidence and opine that Mulitauaopele was using Vitolio's weaknesses to smuggle drugs require reversal of Mulitauaopele's convictions unless they were harmless. *See Lui*, 941 F.2d at 848 (unless there is "a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required") (quoting *Schneble v. Fla.*, 405 U.S. 427, 432 (1972)); *United States v. Binder*, 769 F.2d 595, 601-02 (9th Cir. 1985) (erroneous admission of expert testimony is reversible when it more probably than not materially affected the verdict) (citing *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977)). In other words, reversal is required unless "it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." *Lim*, 984 F.2d at 335; *Lui*, 941 F.2d at 848; *see also* T.C.R.C.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

Although T.C.R.Ev. 704 does not prohibit experts from testifying as to ultimate issues, we hold that allowing Sunia to provide an opinion that Mulitauaopele used Vitolio's weaknesses when Sunia could provide no proper foundation for his opinion was an error that was not harmless. Sunia's testimony that Mulitauaopele was using Vitolio's weaknesses to smuggle drugs was improper and prejudicial evidence by a police expert that Mulitauaopele was, in fact, guilty. Under these circumstances, we cannot conclude that it is more probable than not that Sunia's testimony did not materially affect the verdict.

Our conclusion that admission of Sunia's opinion as to Mulitauaopele's guilt was reversible error makes it unnecessary for us to decide whether the error in admitting drug courier profile evidence, standing alone, was reversible error. As the record clearly contains sufficient evidence to permit conviction even without any of Sunia's testimony, we are not persuaded by Mulitauaopele that his convictions should be reversed based on insufficient evidence. However, we cannot say that the jury would probably have found Mulitauaopele guilty absent Sunia's opinion as to guilt. It is difficult to conceive of expert testimony that is more

41

prejudicial and less probative than an opinion by a law enforcement expert, unsupported by anything permitted by court rules, that a defendant is guilty. The judgment against Mulitauaopele is reversed and this case is remanded for a new trial.[4]

It is so ordered.

---

KRUSE, Chief Justice, Concurring:

I agree with the portion of the lead opinion, authored by Acting Associate Justice Mollway, concerning the inadmissibility of the drug courier profile evidence. In my view, that alone is enough to warrant a new trial. Thus, I do not find it necessary to explore other improprieties with Captain Sunia's testimony, though many aspects of it were troubling.[1] As the lead opinion amply demonstrates this profile evidence was unfairly prejudicial and thus substantially outweighed its probative value. The trial court abused its discretion in admitting it.

Finding error, the next question is whether or not it was harmless. *Compare United States v. Pinnigorii*, 96 F.3d 1132, 1143 (9th Cir. 1996) (harmless error analysis applied to classic trial error such as improper admission of evidence) and T.C.R.Cr.P. 52(a), *with U.S. v. Burt*, 143 F.3d 1215, 1217 (Plain error analysis typically reserved for forfeited errors) and T.C.R.Cr.P. 52(b). Under a harmless error standard, "if the evidence presented at trial is ambiguous, even a relatively minor error requires reversal." *United States v. Smart*, 9 F.3d 1379, 1386 (D.C.Cir. 1996) (citing *O'Neal v. McAninch*, 514 U.S. 432 (1995)). "We must reverse . . . unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997).

Here, the government's case without the profile evidence was at best ambiguous and open to reasonably differing interpretations. *But see United States v. Lim*, 984 F.2d 331, 335 (9th Cir. 1993); *United States v.*

---

[4] As we reverse Mulitauaopele conviction, we need not determine whether his sentence was improper or unconstitutional.

[1] The lead opinion and the dissent differ as to whether Sunia's testimony was properly admitted under the rules governing expert testimony. *See* T.C.R.Ev. 702-705. I do not find this discussion necessary because, even if expert testimony is proper under those rules, it can still be excluded under Rule 403. *See, e.g., United States v. Boney*, 977 F.2d 624, 631 (D.C. Cir. 1992); *United States v. Young*, 745 P.2d 733, 755-65 (2d Cir. 1984) (Newman, J., concurring). Thus, because I am of the view that the profile evidence itself merits reversal under Rule 403, I do not feel we need to address those points, even if raised by ASG.

*Williams*, 957 F.2d. 1238, 1242-43 (5th Cir. 1992); *United States v. Quigley*, 890 F.2d 1019, 1024 (8th Cir. 1989). Essentially, the prosecution's evidence was the self-serving testimony of Vitolio, bolstered by Sunia's improper testimony. Additionally, the trial judge did not give any limiting instructions, either during Sunia's testimony or before jury deliberation. Thus, absent any physical evidence tying the defendant to the drugs—which is typical in a case of constructive possession—the verdict turned entirely on the credibility of the witnesses, spcifically Vitolio's. *See generally United States v. Gartmon*, 146 F.3d 1015, 1026 (D.C. Cir. 1998) (quoting *United States v. North*, 910 F.2d 843, 895 (D.C. Cir. 1990) (defendant's entitlement to a new trial depends on the "closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error"). The admission of the profile evidence, therefore, did, more probably than not, materially affect the verdict.

I therefore concur with the lead opinion's result, requiring a new trial, and express no view as to the scope of T.C.R.Ev. 702-705.

---

WALLACE, Acting Associate Justice, dissenting:

I understand the concerns expressed by the majority and am not unsympathetic. However, as an appellate court, our responsibilities are governed by certain limits critical to the smooth operation of the justice system. Three of those cause me to dissent. First, we are limited to the lower court's factual record. A second limit is the standard of review: here, abuse of discretion. The standard of review is important not only because it is sometimes dispositive to the outcome of the appeal, but also because it traces the proper distribution of judicial power between the trial and appellate courts. The third limit is the law applicable to the case before us. Because I disagree with the majority in these critical areas, I am unable to join in the majority disposition.

## I.

I start with the issue of the drug courier profile evidence. The majority concludes:

> [T]he unfair prejudicial effect of the drug courier profile evidence substantially outweighed its probative value, as it merely explained a relatively simple crime. The evidence. should have been excluded under Rule 403 and the court committed a manifest error by admitting it. Accordingly, we conclude that the trial court abused its discretion in allowing Sunia to testify that Vitolio fit the profile of a vulnerable mule.

43

Majority Opinion, page 12. Here I disagree with the majority's understanding of the law. While recognizing that the question is whether the evidence's *unfair* prejudicial effect *substantially* outweighed its probative value, T.C.R.Ev. 403; *accord* Fed. R. Evid. 403, the majority fails to identify how the evidence's prejudicial effect is unfair, and how it substantially outweighs its probative value. Indeed, there is no showing that there was any unfair prejudice at all, much less that it substantially outweighed the evidence's probative value.

But that is not all. The majority articulated the correct standard of review, abuse of discretion, but it failed to apply this standard in any meaningful sense. "A trial court has broad discretion concerning the admissibility or exclusion of expert testimony." *EW Truck & Equip. Co. v. Coulter*, 20 A.S.R.2d 88, 92 (1992). To be of concern to the appellate court, the trial court must have *abused its discretion*. *United States v. Hanna*, 293 F.3d 1080, 1085 (9th Cir, 2002); *United States v. VonWillie*, 59 F.3d 922, 928 (9th Cir. 1995) (stating that there is no difference between the "abuse of discretion" standard and the "manifestly erroneous" standard, and adopting the former characterization); *United States v. Rahm*, 993 F.2d 1405, 1409-10 (9th Cir. 1993) (same). In effect, the majority determined what the trial court should have done, but the appellate court cannot substitute its judgment for the lower court's. *United States v. McMullen,* 98 F.3d 1155, 1159 (9th Or, 1996). Under an abuse of discretion standard, an error is not enough. The trial court's evidentiary rulings may be reversed only if there is abuse of discretion, which has been defined as "a *plain* error, discretion exercised to an end not justified by the evidence, a judgment that is *clearly* against the logic and effect of the facts as are found." *Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (emphasis added, internal quotation marks omitted). Reversal is possible only "when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).

I would have difficulty holding there was trial court error in admitting the evidence at issue. Certainly, then, applying the law and the applicable standard of review, as I must, I cannot conclude that the trial court abused its discretion. The majority cites *United States v. Lim*, 984 F.2d 331 (9th Cir. 1993), *United States v. Lui*, 941 F.2d 844 (9th Cir. 1991), *United States v. Jones*, 913 F.2d 174, 177 (4th Cir. 1990), *United States v. Carter*, 901 F.2d 683, 684 (8th Cir. 1990), and *Commonwealth v. Poitras*, 774 N.E.2d 647, 650-51 (Mass. App. Ct. 2002), but this case is significantly different. Unlike *Lim, Lui, Jones, Carter*, and *Poitras*, Sunia did not opine that the defendant fit the drug courier profile. This is not "a case in which the government attempted to establish the defendant's guilt by showing that he has the same characteristics as a drug courier." *Cf. Jones*, 913 F.2d at 177. Instead, the officer opined that

44

Mulitauaopele's alleged accomplice, Vitolio, fit the drug courier profile. Considering that Vitolio himself testified that he was a "mule" (drug courier), there was no unfair prejudicial effect. Unlike the cases the majority cites, the drug courier profile was not used as substantive evidence of the defendant's guilt, but only of Vitolio's guilt. Put another way, as the majority recognizes, drug courier profiles are "inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers." *Lui*, 941 F.2d at 847 (internal quotation marks omitted). This unfair prejudice is suffered by the person profiled, Vitolio. Mulitauaopele suffers no unfair prejudice, and he cannot complain of Vitolio's harm.

The majority's citation of *Poitras* is doubly ironic because, in that child abuse case, the court permitted profile evidence of child abuse victims. 774 N.E.2d at 649-50. The appellate court held that the trial court abused its discretion only when it admitted an opinion that the defendant fit the profile of child abusers. *Id.* at 650. The prejudicial effect was improper because the jury might conclude that, because the defendant fit the profile, he is more likely to have committed the crime. *Id.* There is no such unfair prejudice here, where the profile is of the accomplice, not the defendant. Just as the trial court in *Poitras* did not abuse its discretion in permitting profile evidence of child abuse victims, the trial court here did not abuse its discretion in permitting profile evidence of the accomplice. The analysis in *Poitras*, a case relied on by the majority, demonstrates why the majority is wrong in its holding.

## II.

The majority holds that because "Sunia opined that Mulitauaopele had used Vitolio's weaknesses," this was "tantamount to saying ... that Mulitauaopele was guilty." I read the record differently. Sunia never opined that *Mulitauaopele* used Vitolio's weaknesses. Instead, Sunia opined that "*they*" used Vitolio's weaknesses. The majority just assumes, with no basis in the record, that Sunia meant "Mulitauaopele" when he said "they." I cannot agree with the majority's description of the record.

But, even assuming that Sunia said what the majority claims, I disagree that his opinion is "tantamount" to saying that Mulitauaopele was guilty. Sunia did not state Mulitauaopele was guilty. Sunia did not even necessarily imply guilt. Mulitauaopele could use Vitolio's weakness and yet not be guilty of drug possession. Suppose, for instance, that Mulitauaopele mistakenly thought that he was using Vitolio to smuggle Russian diamonds or Cuban cigars instead of illegal drugs. In that case, Mulitauaopele would have used Vitolio's weaknesses, but he is not guilty of unlawful possession of drugs. Under the majority's reasoning, anytime an expert gives an opinion that tends to show that the defendant

45

is guilty, *i.e.*, every time an expert's opinion is relevant—a necessary precondition to it being admissible at all—the expert is somehow giving an opinion that the defendant is guilty.

## III.

So far, I have disagreed with the majority's conclusion that Sunia's opinion that Mulitauaopele (or "they") used Vitolio's weakness was inadmissible because the opinion was based on improper drug courier profile evidence. But even assuming for the sake of argument that drug courier profile evidence would be improper in this case, the majority's conclusion still does not follow.

First, Sunia's opinion was based not on profile evidence, but on the officers' firsthand observations that Vitolio was weak. This is not profile evidence, and it is not inadmissible just because other drug couriers tend to act similarly. Sunia's opinion was properly based on the officers' observations that Vitolio did not answer the questions put to him, he was fifteen years old, he appeared nervous, all his travel arrangements were made by another, his airline ticket was paid for by another, he let another fill out his declaration form, etc. Sunia's opinion that Mulitauaopele used Vitolio's weakness was not based at all on any drug courier profile. It does not matter how other mules act. All that mattered, as far as Sunia's opinion was concerned, was what Mulitauaopele (or "they") did, and how Vitolio acted.

Second, even if Sunia's opinion was based entirely on an inadmissible drug courier profile, his opinion is nonetheless admissible under the rules of evidence. T.C.R.Ev. 702 governs the admissibility of expert opinions, and nowhere is there a requirement that the basis of the opinion be admissible. As the majority opinion observes but does not apply, T.C.R.Ev. 703 permits an expert's opinion to be based on inadmissible facts or data. According to Rule 705, the basis need not be disclosed. T.C.R.Ev. 705 (stating that the "expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise" or unless the basis is elicited on cross-examination). Under the applicable rules of evidence, an expert may give, what the majority calls, an "unadorned" and "unexplained" opinion. The majority opinion fails to follow the rules of evidence. This I cannot do.

## IV.

Because I disagree with the majority's reading of the record, its failure to apply the appropriate standard of appellate review meaningfully, and its understanding of applicable law, I must dissent. I would affirm the conviction.