KINDER, J.
*816 *751 On February 28, 2013, Courtney Jackson was shot twice in the back as he boarded a bus at the Massachusetts Bay Transportation Authority (MBTA) station on Dudley Street in the Roxbury area of Boston. A Superior Court jury convicted the defendant, Jamel Bannister, of murder in the second degree and unlawfully carrying a firearm based on evidence that he aided and abetted Brian Cooper in the shooting.[1] On appeal, the defendant claims that his convictions should be reversed because (1) the police lacked reasonable suspicion to stop him after the shooting *817 and evidence seized thereafter should have been suppressed, (2) there was insufficient evidence of his intent to aid and abet Cooper, (3) he was prejudiced by the erroneous admission of prior bad act evidence, (4) the judge gave erroneous jury instructions that created a substantial risk of a miscarriage of justice, and (5) he was deprived of the effective assistance of counsel when trial counsel failed to request a so-called Daubert- Lanigan hearing on thermal imaging evidence.[2]
The defendant also raises three issues from which counsel has found it necessary to disassociate himself, in accordance with Commonwealth v. Moffett, 383 Mass. 201, 203-209, 418 N.E.2d 585 (1981). All three are based on a claim that trial counsel was ineffective. First, the defendant faults trial counsel for failing to object to the prosecutor's closing argument. Second, he claims that trial counsel should have moved to suppress the defendant's statement to the police. Finally, the defendant argues that trial counsel should have challenged two jurors for cause. Discerning no error in the denial of the motion to suppress, the trial, or trial counsel's performance, we affirm.
Background. We summarize the trial evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 677-678, 393 N.E.2d 370 (1979). At all relevant times, the defendant and Cooper were members of affiliated street gangs while the victim was a member of a rival gang. The defendant and the victim had a history of confrontation, which included fist fights while the two were incarcerated in 2008 and 2009.
Around 9:48 P . M . on February 28, 2013, the defendant and Cooper approached the *752 victim on a bus platform at the Dudley Street MBTA station (bus station). Video surveillance from the MBTA's cameras shows the defendant and Cooper walking side-by-side onto the platform. They stopped and engaged the victim in conversation. Moments later, as the victim walked away and began to board a bus, the defendant and Cooper each pulled a hand from his pocket, raised an arm, and stepped toward the victim. Cooper fired two shots into the victim's back while the defendant, standing behind Cooper, lowered his arm to his side. The defendant and Cooper then turned and ran from the station toward Washington Street. A witness saw the defendant put a gun into his pocket as he ran. The victim collapsed in the bus and later died from his injuries.
Cooper and the defendant turned left onto Washington Street where they were confronted by Boston police Officers Dominic *818 Columbo and Wilfredo Coriano, who were in the area. The officers responded to the gunshots by drawing their firearms and running toward the bus station. As Cooper and the defendant ran toward the officers, Coriano pointed his firearm at Cooper and ordered him to the ground. Cooper complied, and Coriano recovered a revolver that Cooper was holding behind his back. Coriano observed the defendant "sliding to the right" and told Columbo to stop him. Columbo pointed his firearm at the defendant and ordered him to the ground. The defendant responded, "[F]uck you," and fled. Columbo gave chase and observed the defendant increase his speed as he passed a bank parking lot. Shortly thereafter, the defendant was apprehended by two other officers. He struggled with them and claimed that someone was shooting at him.
After the defendant was detained, officers retraced his steps and discovered a small bag of what was later determined to be cocaine. They also found a loaded semiautomatic firearm on the ground inside the bank parking lot, at the location where the defendant had increased his speed. At 10:06 P . M ., an officer took a photograph of the firearm using a thermal imager. The image showed that the firearm was warmer than the pavement. A second recorded image taken ten minutes later revealed that the firearm was still warm, but had lost heat.
The defendant was transported to the police station where he gave a recorded statement. He denied knowing Cooper or being involved in the shooting. The theory of his defense was that he was not involved in the shooting and ran, like everyone else at the bus station, because he was scared that someone was shooting at him.
Discussion. 1. The stop. Before trial, the defendant moved to suppress the drugs and firearm that were recovered along his path of flight, asserting that Coriano and Columbo lacked reasonable suspicion to stop him. Following an evidentiary hearing, a judge other than the trial judge (motion judge) found, in a comprehensive written decision, that the defendant and Cooper were the only people running from the scene of the shooting, that the defendant and Cooper were running together, and that Cooper was holding a firearm. The motion judge concluded that the officers had reasonable suspicion to stop and detain the defendant in connection with their investigation into gunshots, and he further concluded that the defendant, having abandoned the firearm, lacked standing to *819 challenge its seizure.[3] On appeal, the defendant claims that *753 the motion judge's finding that he and Cooper were the only people running from the scene was clearly erroneous and argues that his legal conclusions were not supported by the evidence.
We adopt the motion judge's subsidiary findings of fact absent clear error and "independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Catanzaro, 441 Mass. 46, 50, 803 N.E.2d 287 (2004). Bearing in mind that "the clear error standard is a 'very limited form of review,' " wherein we defer to the findings of the motion judge who heard the testimony and observed the witnesses, Commonwealth v. Sanna, 424 Mass. 92, 97, 674 N.E.2d 1067 (1997), quoting Commonwealth v. Yesilciman, 406 Mass. 736, 743, 550 N.E.2d 378 (1990), we discern no error in the motion judge's finding that the defendant and Cooper were the only people running from the scene. Coriano so testified at the evidentiary hearing.
Although the motion judge did not explicitly find at what point the seizure occurred, the parties agree that the defendant was seized when Columbo ordered him to the ground at gunpoint. We agree with the motion judge that, at that time, specific, articulable facts established an individualized suspicion that the defendant was involved in the shooting.[4] See Commonwealth v. Meneus, 476 Mass. 231, 235, 66 N.E.3d 1019 (2017) ; Commonwealth v. Warren, 475 Mass. 530, 534, 58 N.E.3d 333 (2016).
The motion judge found that Coriano and Columbo responded within seconds of hearing gunshots and were confronted by the defendant and Cooper, the only people fleeing from the scene, running in their direction. Coriano could see that Cooper was armed, and that the defendant was running with him. Where, as here, "there may be an 'imminent threat' presented 'because of shots just fired, ... there is an edge added to the calculus upon which ... reasonable suspicion may be determined.' " Commonwealth v. Ancrum, 65 Mass. App. Ct. 647, 654, 843 N.E.2d 110 (2006), quoting Commonwealth v. Doocey, 56 Mass. App. Ct. 550, 557 & n.12, 778 N.E.2d 1023 (2002). "Specifically, the *820 'test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government's need for prompt investigation.' " Commonwealth v. McKoy, 83 Mass. App. Ct. 309, 312, 983 N.E.2d 719 (2013), quoting Commonwealth v. Stoute, 422 Mass. 782, 791, 665 N.E.2d 93 (1996). Bearing this principle in mind, and considering the nature of the crime, the defendant's proximity to the crime scene, and his flight from the scene with a person who was visibly armed, we conclude there was reasonable suspicion to stop him. See McKoy, supra at 313, 983 N.E.2d 719. Accordingly, the motion to suppress was properly denied.
2. Proof of intent. Next, the defendant claims that the Commonwealth presented insufficient evidence that he knowingly participated in the murder with the intent required for that offense. See Commonwealth v. Zanetti, 454 Mass. 449, 467-468, 910 N.E.2d 869 (2009). Specifically, he claims that there was no evidence that he intended to shoot the victim or that he intended for Cooper to do so. We disagree.
*754 "Murder in the second degree is an unlawful killing with malice aforethought; malice includes any intent to inflict injury on another without legal excuse or palliation." Commonwealth v. Casale, 381 Mass. 167, 171-172, 408 N.E.2d 841 (1980). Although it is undisputed that the defendant did not shoot the victim, the jury could reasonably infer that the defendant intended to inflict injury on the victim from the surveillance video, which shows him removing his hand from his pocket, raising his arm in the direction of the victim, and stepping forward. The defendant then lowered his arm as Cooper fired two shots. In addition, an eyewitness reported that after the shots were fired, he saw the defendant put a gun into his pocket. This evidence was sufficient to prove beyond a reasonable doubt that the defendant shared the intent to shoot the victim. See id. at 173, 408 N.E.2d 841 ("The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").
The Commonwealth's evidence also demonstrated "the defendant's knowledge of the circumstances and subsequent participation in the offense." Id. It is clear from the surveillance footage that the defendant and Cooper arrived together at the bus station just seconds before the victim. Both carried loaded firearms,[5] and they approached the victim directly. See Commonwealth v. Britt, 465 Mass. 87, 95, 987 N.E.2d 558 (2013). After the shooting, the defendant and *821 Cooper both fled in the same direction. Such evidence supported an inference that the defendant "knowingly participated in the commission of the crime charged, alone or with others, with the intent required for the offense." Commonwealth v. Bin, 480 Mass. 665, 674, 107 N.E.3d 1146 (2018), quoting Commonwealth v. Rakes, 478 Mass. 22, 32, 82 N.E.3d 403 (2017).
3. Prior bad acts. Before trial, the Commonwealth filed motions in limine seeking permission to introduce evidence that the defendant and the victim belonged to rival gangs and that there was a history of violence between them. The Commonwealth argued that the evidence was relevant to the defendant's motive and intent on the night of the shooting. After hearing from the parties, the trial judge engaged in the required balancing test and concluded that the probative value of the proposed evidence outweighed its prejudicial effect. He then conducted a voir dire examination of Boston police Officer Jorge Dias, who outlined his twenty years of experience working with gangs in the lower Roxbury and South End areas of Boston, and testified to his personal knowledge of the various gangs and their members, including the defendant, Cooper, and the victim. The trial judge qualified Dias as an expert and allowed his testimony that the defendant, Cooper, and the victim belonged to different gangs.
In accordance with the judge's ruling, Dias testified at trial that, in 2013, the defendant and Cooper were members of affiliated gangs, the Castle Square gang and the Tent City gang respectively, while the victim was a member of a rival gang, the Lenox Street gang. The Commonwealth also presented testimony from employees of the Suffolk County sheriff's department that they had witnessed the defendant and the victim engaged in fist fights with one another in 2008 and 2009.[6]
*755 On cross-examination, defense counsel established that these fights had occurred while the parties were incarcerated. The judge gave contemporaneous limiting instructions when the testimony regarding gangs and altercations between the defendant and victim was introduced, and repeated those instructions in his final charge. On appeal, the defendant claims that the judge erred in admitting this evidence because it was not relevant and the risk of prejudice outweighed the probative value. See *822 Commonwealth v. Dunn, 407 Mass. 798, 807, 556 N.E.2d 30 (1990) ("Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge"). Because the defendant objected, we review under the prejudicial error standard. See Commonwealth v. Foxworth, 473 Mass. 149, 160, 40 N.E.3d 1003 (2015).
We see neither an abuse of discretion nor any other error of law in the judge's decision to admit the evidence in question. Commonwealth v. John, 442 Mass. 329, 338, 812 N.E.2d 1218 (2004). First, Dias's testimony was based on his personal knowledge. See Commonwealth v. Barbosa, 477 Mass. 658, 668, 81 N.E.3d 293 (2017). His "extensive experience with [the] gangs generally, and with the victim and the defendant specifically, qualified him as an expert and provided direct personal knowledge for the testimony he offered." Id. at 667-668, 81 N.E.3d 293. Second, evidence that the defendant and Cooper were in affiliated gangs while the victim was in a rival gang was relevant to the defendant's motive and state of mind on the night of the shooting. See John, supra at 337, 812 N.E.2d 1218 ; Commonwealth v. Maldonado, 429 Mass. 502, 504, 709 N.E.2d 809 (1999), and cases cited. Finally, evidence that the defendant and the victim had been involved in physical altercations four and five years earlier was admissible to "demonstrate[ ] [the] continuing animosity on the defendant's part toward" the victim. Commonwealth v. Butler, 445 Mass. 568, 576, 839 N.E.2d 307 (2005). See Dunn, 407 Mass. at 807, 556 N.E.2d 30 ("Evidence is relevant if it has a rational tendency to prove a material issue"). It also "support[ed] the Commonwealth's theory of motive or intent on the night of the killing." Commonwealth v. Facella, 478 Mass. 393, 401, 85 N.E.3d 665 (2017). Thus, while the evidence was undoubtedly prejudicial, it "was essential to understanding the motivation behind the crime." Maldonado, supra at 504, 709 N.E.2d 809. Without it, "the killing could have appeared to the jury as an essentially inexplicable act of violence." Commonwealth v. Bradshaw, 385 Mass. 244, 269, 431 N.E.2d 880 (1982).
4. Jury instructions. The defendant raises two claims of error regarding the jury instructions. Because he did not object to the instructions at trial, we review his claims to determine whether there was error, and, if so, whether the error created a substantial risk of a miscarriage of justice. Commonwealth v. Alphas, 430 Mass. 8, 13, 712 N.E.2d 575 (1999).
First, the defendant argues that the judge gave an erroneous instruction in connection with his discussion of the elements of murder. The judge stated, "[T]he Commonwealth also has to prove beyond a reasonable doubt that the defendant knew that either he, *823 himself, was armed with a gun or that Mr. Cooper was armed with a gun, his so-called joint venturer, or that he knew that both were armed with a gun." *756 The Commonwealth concedes that this instruction was erroneous. See Britt, 465 Mass. at 100, 987 N.E.2d 558 ("in cases tried hereafter, juries should not be instructed that the Commonwealth must prove that a joint venturer knew that the principal was armed to return a conviction of murder based on deliberate premeditation"). However, the error did not create a substantial risk of a miscarriage of justice for two reasons. First, the instruction expanded the Commonwealth's burden of proof, and "[w]e cannot see how requiring the Commonwealth to prove an additional element in its case would harm the defendant." Commonwealth v. Mullane, 445 Mass. 702, 718 n.11, 840 N.E.2d 484 (2006). Second, "[t]he jury necessarily found that the defendant knew that someone participating in the joint venture had a weapon" because they convicted him of carrying a loaded firearm. Britt, supra at 98, 987 N.E.2d 558.
Next, the defendant claims that the judge erred when he informed the jury they were not to worry about the case against Cooper because "[a]nother judge is dealing with that case."[7] The defendant cites no authority in support of his claim that this was error, and we have found none. Instead, the cases suggest that such an instruction is permissible. See, e.g., Commonwealth v. Kincaid, 444 Mass. 381, 388, 828 N.E.2d 45 (2005) (judge instructed jury not to speculate on reason codefendant was not being tried with defendant); Commonwealth v. McQuade, 46 Mass. App. Ct. 827, 835 n.5, 710 N.E.2d 996 (1999) (jury "expressly instructed to consider only the evidence introduced at trial and not to speculate as to the reasons for the absence of the alleged coventurers"). Even if we were to assume that the instruction was erroneous, we are confident that it did not materially influence the verdict. See Alphas, 430 Mass. at 13, 712 N.E.2d 575, quoting Commonwealth v. Freeman, 352 Mass. 556, 564, 227 N.E.2d 3 (1967) ("An error creates a substantial risk of a miscarriage of *824 justice unless we are persuaded that it did not 'materially influence[ ]' the guilty verdict"). The jury were well aware that Cooper was alleged to have fired the fatal shots and would not have been surprised to learn that he also faced criminal charges.
5. Ineffective assistance. The defendant raises four claims of ineffective assistance of counsel. First, he claims that trial counsel should have requested a Daubert- Lanigan hearing on the reliability of thermal imaging evidence. Pursuant to Moffett, 383 Mass. at 203-209, 418 N.E.2d 585, the defendant also alleges that trial counsel should have (1) objected to the prosecutor's closing argument, (2) moved to suppress his statement to the police, and (3) moved to strike two jurors. The defendant has not moved for a new trial, see Commonwealth v. Zinser, 446 Mass. 807, 810, 847 N.E.2d 1095 (2006) (motion for new trial is "the preferred method for raising a claim of ineffective assistance of counsel"), so we must decide whether "the factual basis of the claim[s] appear[ ] indisputably on the trial record."
*757 Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344, 639 N.E.2d 1092 (1994). We address each ineffective assistance claim in turn, applying the familiar two-prong Saferian test. Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d 878 (1974). First, we examine "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinarily fallible lawyer." Id. Second, we examine whether such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Id. The defendant has the burden to establish both prongs. Commonwealth v. Pike, 53 Mass. App. Ct. 757, 760, 762 N.E.2d 874 (2002).
a. Thermal imaging. Boston police Officer Yong Lee testified at trial that he recorded two images of the semiautomatic firearm using a thermal imager, a device that detects heat from objects. Lee described the images produced by the device and explained that images that appear bright and white indicate that an object is warm, while images that are darker or black indicate that an object is cool. Lee stated that he had tested the machine before using it on February 28, 2013, and he confirmed that the thermal imager does not provide a specific temperature. Rather, it shows whether objects are warmer or cooler than surrounding items. Based on images showing that the gun was warmer than the pavement at 10:06 P . M . and had lost heat ten minutes later when he recorded a second image, Lee opined that the gun had been in the parking lot for a short period of time. The defendant did not object to this testimony at trial, but now argues that trial counsel *825 should have requested a Daubert- Lanigan hearing because such evidence is "of highly dubious scientific merit."
Where, as here, the defendant has not filed a motion for new trial accompanied by an offer of proof supporting his claim that thermal imaging is scientifically unreliable, we cannot say that counsel's failure to request a Daubert- Lanigan hearing constitutes behavior that falls measurably below that which might be expected from an ordinarily fallible lawyer. See Commonwealth v. Sparks, 433 Mass. 654, 660, 746 N.E.2d 133 (2001). Trial counsel was free to (and did) cross-examine Lee regarding the procedures he used and the limitations of the technology, and we are not persuaded that the additional questions raised by the defendant in his brief "would have added materially to the defendant's case." Commonwealth v. Aspen, 85 Mass. App. Ct. 278, 280-281, 8 N.E.3d 782 (2014). In short, given the strength of the eyewitness and video surveillance evidence, the defendant has not satisfied his burden of showing that a Daubert- Lanigan hearing "might have accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115, 364 N.E.2d 1260 (1977).
b. Prosecutor's closing argument. There is no merit to the defendant's claim that trial counsel was ineffective because he failed to object to portions of the prosecutor's closing argument. Contrary to the defendant's assertion, the prosecutor did not argue that the defendant denied knowing the victim in his statement to police. Instead, "the prosecutor was responding to an argument made by defense counsel," that the defendant did not know the victim. Commonwealth v. Ortiz, 463 Mass. 402, 416, 974 N.E.2d 1079 (2012). There was nothing improper in the prosecutor's argument that the jury should infer from surveillance video evidence that Cooper and the defendant came to the bus station together with the intent to shoot the victim, and that the defendant pulled out a gun and pointed it at the victim while Cooper fired the fatal shots. "The prosecutor *758 may argue inferences from the evidence favorable to his case." Commonwealth v. Lyons, 426 Mass. 466, 472, 688 N.E.2d 1350 (1998). Trial counsel's failure to object to these statements provides some indication that the tone and manner of the argument were not unfairly prejudicial, Commonwealth v. Mello, 420 Mass. 375, 380, 649 N.E.2d 1106 (1995), and, considering "the prosecutor's remarks in the context of his entire closing argument, the judge's instructions to the jury [that arguments are not evidence], and the evidence produced at trial," Lyons, supra at 471, 688 N.E.2d 1350, we see no substantial risk that justice miscarried. *826 c. Motion to suppress statement. Next, the defendant faults trial counsel for failing to seek suppression of the defendant's statement to the police on the ground that the defendant was too intoxicated to knowingly and intelligently waive his Miranda rights. The record shows that trial counsel's decision in this regard was a strategic one,[8] which we cannot say was "manifestly unreasonable when undertaken" (citation omitted). Commonwealth v. Zagrodny, 443 Mass. 93, 98, 819 N.E.2d 565 (2004). In any event, the transcript of the defendant's statement shows that he was lucid, coherent, and able to understand his circumstances and surroundings. He verbally confirmed his understanding of the Miranda warnings, and he demonstrated that understanding by ending the interview. See Commonwealth v. Ward, 426 Mass. 290, 295-296, 688 N.E.2d 227 (1997). Because a motion to suppress the statement was not likely to succeed, trial counsel was not ineffective for failing to file it. See Commonwealth v. Comita, 441 Mass. 86, 91, 803 N.E.2d 700 (2004), and cases cited.
d. Failure to strike jurors. Although the defendant characterizes his final claim as one of ineffective assistance of counsel, the argument set forth in his brief is that the trial judge erred in concluding that two seated jurors were impartial. "We afford a trial judge a large degree of discretion in the jury selection process," Commonwealth v. Long, 419 Mass. 798, 803, 647 N.E.2d 1162 (1995), because "[a] trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially." Commonwealth v. Lopes, 440 Mass. 731, 736, 802 N.E.2d 97 (2004). It is clear from our review of the transcript that the judge was sensitive to the potential of juror bias against gang members. He specifically asked jurors during individual voir dire whether hearing such evidence would affect their ability to be fair and impartial. Juror no. two was asked a compound question by the judge.[9] When the juror offered only a single response -- "No" -- neither the judge nor counsel inquired *827 further, the juror was found indifferent, and there was no objection. While the compound question should have been avoided, we are confident that in these circumstances the juror's one-word response was intended to convey *759 that evidence of gang affiliation would not affect his ability to be fair and impartial.
Finally, the defendant claims that the judge abused his discretion when he found juror no. sixteen indifferent.[10] According to the defendant, that juror's equivocal responses to questions about the potential impact of gang evidence, which included, "I think I could," and "No, I don't think it would," should have resulted in the juror's removal for cause. We disagree. It is well settled that a potential juror's use of seemingly equivocal language is not determinative of the juror's ability to be impartial. See Commonwealth v. Colton, 477 Mass. 1, 17, 73 N.E.3d 783 (2017) ("Yes, I think so" fairly viewed as unequivocal); Commonwealth v. Jaime J., 56 Mass. App. Ct. 268, 274, 776 N.E.2d 1023 (2002). "When a trial judge -- who is in a much better position than an appellate court to evaluate a prospective juror's ability to be impartial -- has examined a juror for potential bias and declared her indifferent, appellate courts defer to the judge's discretion 'unless juror prejudice is manifest.' " Jaime J., supra at 272, 776 N.E.2d 1023, quoting Commonwealth v. Seabrooks, 433 Mass. 439, 443, 743 N.E.2d 831 (2001). We discern no prejudice here.
Judgments affirmed.

The defendant was indicted for murder in the first degree, G. L. c. 265, § 1, possession of a class B controlled substance with intent to distribute, G. L. c. 94C, § 32A (c ), doing so while in a school zone, G. L. c. 94C, § 32J, and two counts of illegally possessing a firearm, G. L. c. 269, § 10 (a ). The Commonwealth also alleged that the defendant was an armed career criminal. See G. L. c. 269, § 10G. The Commonwealth dismissed one of the firearm indictments prior to trial, and the armed career criminal charge was dismissed after the verdicts were returned. The jury returned verdicts of not guilty on the drug indictments.

See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ; Commonwealth v. Lanigan, 419 Mass. 15, 641 N.E.2d 1342 (1994).

The defendant also claimed that the officers lacked probable cause to arrest him. The motion judge concluded otherwise, and the defendant does not claim error in this conclusion. We therefore limit our analysis to the issue pressed by the defendant on appeal -- that the officers lacked reasonable suspicion when they stopped him.

Because we conclude that the police had reasonable suspicion to stop the defendant, we need not address the defendant's standing to challenge the seizure of the firearm in the parking lot.

The defendant does not challenge the sufficiency of the evidence that he carried the loaded semiautomatic firearm.

The transcript of Robert Ferrera's testimony begins at what appears to be a mid-point in his direct examination. However, we discern from the Commonwealth's motion in limine that the fight about which Ferrera testified occurred in 2009.

The judge's full instruction was as follows:
"As I've already told you, the Commonwealth is not claiming as you well know now that the defendant was the person who fired the shots into Courtney Jackson. That the Commonwealth claims is Brian Cooper. Let me just pause there for a moment because you're intelligent people. You must be wondering, well, where's Brian Cooper? What about the case against him? Don't you worry about Brian Cooper. Another judge is dealing with that case. Don't speculate on that at all. We're here focused on whether or not the Commonwealth has proven that [the defendant] aided and abetted Mr. Brian Cooper."

Counsel believed that the defendant's statement demonstrated his full cooperation with the investigation.

After explaining the limited purpose for which evidence of gang membership could be considered, the judge asked, "But you may hear evidence of gang membership. Could you follow my instructions in terms of the proper use of that evidence, first of all. And, secondly, would the fact that there might be some gang evidence involved here, gang affiliation involved here, would that affect your ability to be fair and impartial?"

The defendant's pro se Moffett brief refers to this juror as juror no. five. The transcript, however, is inconsistent in its reference to this juror. During the jury selection process, the clerk calls "juror no. 16," who answers, "Here." The next portion of the transcript is described as "voir dire of potential juror no. 5." But at the end of that voir dire, the juror is referred to as "juror no. 16." We note that the transcript shows that a voir dire of juror no. 5 had already occurred.