NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1373

COMMONWEALTH

vs.

MIGUEL BAPTISTA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the defendant, Miguel Baptista, appeals from his conviction for unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a).[1]  He argues that his pretrial motion to suppress evidence, including gunshot residue found on his hands, should have been allowed because the police did not have reasonable suspicion to stop him when they

_____

[1] Before trial, an indictment for possession of ammunition without a firearms identification card, G. L. c. 269, § 10 (h) (1), was dismissed at the request of the Commonwealth. The jury acquitted the defendant of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); possession of a large capacity firearm, G. L. c. 269, § 10 (m); and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b). After trial, by agreement of the parties, the Commonwealth dismissed the subsequent offense portion of the indictment on which the defendant was convicted.

saw him running near the scene of a recent shooting.  He further argues that the evidence at trial was insufficient to prove that he possessed a firearm found under a bush along his route.  We affirm.

Background.  Based on the evidence presented at trial, the jury could have found as follows.  At about 5:30 P.M. on November 26, 2019, multiple gunshots rang out on Annunciation Road in the Roxbury section of Boston.  A woman sitting in a parked car at a community center was shot.  About a block away from the shooting scene, a bystander saw a man who was jogging throw something into a bush along Parker Street.

Nearby, Boston police Officers Sean Murphy and Martin Dunlap were on patrol in a marked cruiser.  They drove on Parker Street toward the sound of the gunshots and saw people walking away from the area who appeared to be in shock.  The defendant drew the officers' attention because he was running and was barefoot.  At first he ran straight toward the cruiser, but then he veered across Parker Street.  The officers got out of the cruiser and chased him.  While running, the defendant took off his jacket and discarded it in the middle of the street.  The officers caught up to him and placed him in handcuffs.

The police canvassed the route from where the defendant was apprehended on Parker Street to the shooting scene.  Alerted by the bystander, an officer looked in the bush and found a nine-

2

millimeter Ruger semiautomatic firearm.  Approximately one block from where the firearm was found, on the corner of Parker Street and Annunciation Road, was the defendant's right sneaker.  On Annunciation Road, about halfway between the right sneaker and the shooting scene, was his left sneaker.  In the area of the shooting were thirty-three spent shell casings.  Based on comparison testing, a ballistician opined that twenty-two of them had been ejected from the Ruger.  From the shooting victim's car, the police recovered ballistics evidence including a projectile in the trunk.  The ballistician opined that it had been fired from the Ruger.[2]

The defendant was transported to a police station, where both of his hands tested positive for gunshot residue, showing that he had either fired a gun, been in the vicinity of a gun being fired, or touched something with gunshot residue on it. The defendant did not have a license to carry a firearm. Interviewed by detectives, the defendant was evasive about whether he had been on Annunciation Road, but admitted that he "made a left" onto Parker Street.  He stated that he ran because he heard gunshots; asked how far away from him the gunshots

---

[2] On the roof of the community center, the police found a second nine-millimeter firearm.  The ballistician opined that four cartridge casings found at the shooting scene were ejected from that firearm, but that a bullet fragment in the victim's car was not shot from it.

3

were, he said, "I don't know, I'm not a scientist," and they could have been ten feet or one hundred feet away.

In closing, defense counsel argued that the defendant was an innocent bystander who heard gunshots and ran, and the gunshot residue could have gotten on his hands when he fell and touched the ground.

Discussion. 1. Motion to suppress. We summarize the facts as found by the motion judge, which we accept absent clear error, and supplement them with uncontested facts in the record that are consistent with her findings. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 430 (2015). We "review independently the application of constitutional principles to the facts found." Commonwealth v. Warren, 475 Mass. 530, 534 (2016), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

When Officers Murphy and Dunlap heard the gunshots, they were two or three blocks away from Annunciation Road. In their marked cruiser, the officers drove toward the sound of the gunshots and saw people walking away from the area, some of whom appeared to be in fear. The only person running was the defendant. He was running away from Annunciation Road before he saw the police officers, and not in reaction to seeing them. At first the defendant ran straight toward the cruiser, but then he changed direction. At some point, the officers noticed that he

4

had no shoes on.  The officers got out of the cruiser and ran after him.  One or both officers ordered the defendant to stop.  While running, the defendant took off his jacket and discarded it in the middle of the street.  The officers stopped the defendant and handcuffed him.  The defendant was taken into custody at 5:31 P.M., which was about one minute after the report of shots fired had been broadcast on the police radio.

In analyzing the legality of the stop, we first consider at what point the stop occurred, that is, when "in the circumstances, a reasonable person would believe that an officer would compel him or her to stay."  Commonwealth v. Matta, 483 Mass. 357, 363 (2019).  We conclude that the stop occurred when the officers chased the defendant and ordered him to stop.  See Warren, 475 Mass. at 534 (seizure occurred when officer ordered defendant to stop running and pursued him).

Next, we consider whether the stop was justified.  "To justify a police investigatory stop under the Fourth Amendment or art. 14, the police must have 'reasonable suspicion' that the person has committed, is committing, or is about to commit a crime."  Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 8 (2023), quoting Commonwealth v. Costa, 448 Mass. 510, 514 (2007).  In considering whether police had reasonable suspicion to stop a defendant, courts have placed considerable weight on how close to a crime scene and how soon after the crime a

5

defendant is apprehended. "Proximity is accorded greater probative value in the reasonable suspicion calculus when the distance is short and the timing is close." Warren, 475 Mass. at 536.

The motion judge ruled that the police had reasonable suspicion to stop the defendant based on his "suspicious demeanor": he was running just after the shooting and in close proximity to it; he was running before he saw the police, not in reaction to seeing them; and no one else was running. We agree. See Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 819 (2019) (reasonable suspicion to stop defendant "within seconds" of gunshots, where he and codefendant were "the only people fleeing"). See also Commonwealth v. Henley, 488 Mass. 95, 103 (2021) (reasonable suspicion to stop defendant two blocks away from and five minutes after shooting). Contrast Warren, 475 Mass. at 536 (no reasonable suspicion to stop defendant one mile away and twenty-five minutes after crime; flight could be attributed to fear of police).

The defendant argues that the police did not have reasonable suspicion to stop him because "others were also fleeing." We defer to the credibility determinations of the motion judge, who saw and credited the testimony of Officers Murphy and Dunlap that the defendant was the only person running from the area of the shooting. Beyond that, the motion judge

also had the opportunity to view video recordings from surveillance and police body cameras, which have not been provided to us. Without the opportunity to view those video recordings, we cannot second-guess the motion judge's finding that the defendant was the only person running.

The defendant also contends, for the first time on appeal, that the officers' decision to stop him was impermissibly based on his race. To make such a claim, the defendant was required to "first . . . raise a reasonable inference of racial profiling through a motion to suppress." Commonwealth v. Long, 485 Mass. 711, 724 (2020). Had he done so, the motion judge could have held an evidentiary hearing on that issue. See, e.g., Commonwealth v. Stroman, 103 Mass. App. Ct. 122, 127-131 (2023) (describing evidence adduced at Long hearing). In these circumstances, "resolution of the defendant's claim depends on the development of facts not in the record." Commonwealth v. Piard, 105 Mass. App. Ct. 428, 439 (2025). Accordingly, we do not consider it.

2. Sufficiency of evidence. The defendant also contends that the trial judge should have allowed his motion for a required finding of not guilty because the evidence was insufficient to permit the jury to find that he possessed the Ruger firearm found in the bush.

We conclude that the evidence before the jury was sufficient to prove that the defendant possessed the Ruger. Both it and the defendant's sneakers were found along his flight path from the shooting scene on Annunciation Road to where he was apprehended on Parker Street. See Commonwealth v. Ralph R., 100 Mass. App. Ct. 150, 163 (2021) (jury could infer that defendant possessed gun recovered from area within flight path). The defendant had gunshot residue on both hands. Cf. Commonwealth v. Pytou Heang, 458 Mass. 827, 834-836 & n.14 (2011) (possession of firearm proven with evidence defendant's right sleeve tested positive for gunshot residue). The jury could infer that the defendant was the person who the bystander saw toss an item into the bush, and that the item was the firearm. That the defendant threw the firearm added to the quantum of evidence that he possessed it. See Commonwealth v. Steadman, 489 Mass. 372, 386 (2022) (defendant's tossing knife used in murder showed consciousness of guilt).

Judgment affirmed.

By the Court (Ditkoff, Hand & Grant, JJ.[3]),

Clerk

Entered:  August 13, 2025.

---

[3] The panelists are listed in order of seniority.

8